# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROSE GOLD LLC, *Plaintiff*, v. PAYACTIV, INC., *Defendant*. | CIVIL ACTION NO. 17-03647 |

**PAPPERT, J.** September 7, 2018

## MEMORANDUM

Rose Gold LLC alleges that PayActiv, Inc. breached the terms of a contract between the two entities by not paying Rose Gold a purportedly agreed upon $15,000 monthly consulting fee from March 2017 through at least July 2017. PayActiv denies the existence of an enforceable contract and moves to dismiss Rose Gold's Complaint. Rose Gold, despite the fact that there has been no discovery, seeks summary judgment in its favor. The Court denies both motions.

I

Rose Gold is a consulting firm based in Philadelphia that works with companies within the employee benefits administration, Fin-tech, healthcare, and health and life insurance industries. (Compl. ¶ 4, ECF No. 1.) Joshua Spivak is Rose Gold's principal and only member. (*Id.* at ¶ 5.) PayActiv seeks to improve employee wellness with respect to wage access. Safwan Shah serves as PayActiv's Co-Founder, Chief Executive Officer, Chief Financial Officer and Secretary. (*Id.* at ¶ 9.) Ijaz Anwar is the company's Co-Founder and Chief Operating Officer. (*Id.*)

Rose Gold alleges that in August 2016 Shah and Anwar requested Rose Gold's help "with the establishment of PayActiv's customer base and product distribution network." (*Id.* at ¶ 14.) Shah and Anwar wanted Rose Gold to "identify a core of corporate subscribers for the PayActiv platform and assist with its rollout and implementation." (*Id.* at ¶ 15.) The parties allegedly entered into an agreement ("Agreement"), in which they defined Rose Gold's work for PayActiv in an "Initial Statement of Work." (*Id.* at ¶ 16; Ex. 1, Ex. A.) This Initial Statement of Work described Rose Gold's duties, among others, as "increas[ing] [PayActiv's] brand awareness in the employee benefits market," "introduc[ing] and sell[ing] PayActiv directly to new employers" and "creat[ing] and manag[ing] the implementation of a 'strategic partner on-boarding roadmap.'" (*Id.*) Spivak emailed a draft form of the Agreement to Anwar on October 3, 2016. (*Id.* at ¶ 16; Ex. 2.) In the body of the email, Spivak mentioned a consulting fee of $15,000 beginning in October 2016 and referenced conversations related to Rose Gold's potential for equity ownership in PayActiv. (*Id.*) Anwar responded to Spivak on October 6, 2016, stating that he would "wir[e] the funds right now" and planned to discuss equity ownership the following day. (*Id.* at ¶ 18; Ex. 2.)

Around October 7, 2016, Rose Gold received the first $15,000 monthly fee from PayActiv. (*Id.* at ¶ 20.) Rose Gold thereafter received this amount each month from November 2016 until February 2017. (*Id.* at ¶¶ 20–21.) Rose Gold alleges that it faithfully performed its duties under the Agreement. (*Id.* at ¶ 23.)

In March and April 2017, PayActiv paid Rose Gold $10,000 each month—$5,000 less per month than allegedly agreed upon. (*Id.* at ¶ 24.) On the day that Rose Gold

received PayActiv's April consulting fee, Rose Gold's counsel sent a letter to PayActiv, notifying it that the "short" March and April payments materially breached the Agreement and demanding that PayActiv cure the breach within fifteen days. (*Id.* at ¶ 25; Ex. 3.)[1] To date, Rose Gold claims that PayActiv did not pay the full fee for March and April in 2017. (*Id.* at ¶ 26.) Further, Rose Gold argues that the Agreement was for a minimum of twelve months and that PayActiv has not paid the monthly fee since May 2017. (*Id.* at ¶¶ 33–35.)

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the

---

[1] Section 8.2(a) of the Agreement requires that a party claiming material breach must first give written notice to the breaching party and allow fifteen days within which to cure the alleged breach. (*Id.* at ¶ 28; Ex. 1 at 5.)

assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

The plausibility standard, however, "does not impose a heightened pleading requirement" and does not require a plaintiff to plead specific facts. *Id.* In other words, "courts cannot inject evidentiary issues into the plausibility determination." *Id.* The Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss" because a "prima facie case is an evidentiary standard, not a pleading requirement and hence is not proper measure of whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted). Instead, a plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

III

To state a claim for breach of contract, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003). A contract is enforceable when there is an offer, acceptance, and consideration. *Reed v. Pittsburgh Bd. of Pub. Educ.*, 862 A.2d 131, 134 (Pa. Commw. Ct. 2004). Contracts can be express or implied.

A

An express contract is where the parties specifically express the terms of their agreement, either orally or in writing. *Crawford's Auto Ctr., Inc. v. Com., Pa. State Police*, 655 A.2d 1064, 1066 (Pa. Commw. Ct. 1995). Under Pennsylvania law, both parties must manifest an intention to be bound by the terms of the agreement. *Channel Home Centers, Div. of Grace Retail Corp. v. Grossman*, 795 F.2d 291, 298 (3d Cir. 1986). Essential terms must be sufficiently definite to be specifically enforced. *Id.* at 299. Time or manner of performance and price or consideration are essential terms. *Lombardo v. Gasparini Excavating Co.*, 385 Pa. 388, 393 (1956).

PayActiv contends that "no such contract was ever memorialized in writing," arguing that the Agreement was a draft document—that it was unsigned and undated, did not identify PayActiv as a party and did not include specific payment terms. (Mot. to Dismiss at 1, 5.) Furthermore, PayActiv asserts that there was an ongoing negotiation regarding the Agreement's essential terms, as evidenced by Anwar's response to Spivak's email about equity ownership. (*Id.* at 6, Ex. 2.)

Taken as true, however, the facts alleged by Rose Gold state a plausible claim for breach of an express contract. Rose Gold and PayActiv outlined their roles and responsibilities in an Initial Statement of Work. (Compl. at ¶ 16; Ex. 1, Ex. A.) Rose Gold emailed this Statement to PayActiv, attached to the draft form Agreement, on October 3, 2016. (*Id.* at ¶ 16.) In Rose Gold's email exchange with PayActiv, Spivak specifically referenced price and time or manner of performance: "$15,000 per month starting October 1, 2016 with approved expenses reimbursed 1 times [*sic*] month." (Ex. 2.) Spivak's email also suggests that there were conversations about Rose Gold and PayActiv's relationship leading up to the email: "[t]o recap the financial aspects of arrangement . . . ." (*Id.*) Anwar responded to Spivak on October 6, 2016, stating that he would "wir[e] the funds right now." (*Id.*) The essential terms were sufficiently definite to infer that the parties intended to be bound.

B

In some circumstances, "[a] manifestation of mutual assent may be made even though neither offer nor acceptance can be identified and even though the moment of formation cannot be determined." *Fish Net, Inc. v. ProfitCenter Software Inc.*, No. 09-54666, 2013 WL 5635992, at *4 (E.D. Pa. Oct. 15, 2013) (citing Restatement (Second) of Contracts § 22(2) (1981)); *see Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 552 F. Supp. 2d 515, 525 (E.D. Pa. 2008) (determining that a valid contract can be formed even in the absence of signatures). In such cases, a contract may be implied in fact by "looking to the surrounding facts of the parties' dealings." *Ingrassia Const. Co. v. Walsh*, 486 A.2d 478, 483 (Pa. 1984).

A contract inferred from conduct has the same legal effect as that of an express one. *Crawford's Auto Ctr., Inc.*, 655 A.2d at 1067. Because courts wish to effectuate the parties' intentions, they may enforce an indefinite contract if its terms have become definite as the result of partial performance. *Greene v. Oliver Realty, Inc.*, 526 A.2d 1192, 1194 (Pa. 1987). "One or both parties may perform in such a way as to make definite that which was previously unclear." *Id*. Moreover, "a promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service." *Martin v. Little, Brown & Co.*, 450 A.2d 984, 987 (Pa. 1981).

Rose Gold's allegations that PayActiv made consistent $15,000 monthly payments between October 2016 and February 2017 are sufficient to allege an implied contract. Pursuant to the terms discussed in Rose Gold and PayActiv's email exchange, Rose Gold received the first $15,000 consulting fee from PayActiv around October 7, 2016. (Compl. at ¶ 20.) PayActiv continued to pay this amount each month until March and April 2017, where PayActiv paid Rose Gold $10,000 each per month. (*Id.* at ¶¶ 20–21, 24.)

IV

Rose Gold's Motion for Summary Judgment is premature and denied accordingly. A party may move for summary judgment after sufficient time for discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party opposing summary judgment should be given an adequate opportunity to conduct discovery. *Dowling v. City of Phila.*, 855 F.2d 136, 139 (3d Cir. 1988). *See* Fed. R. Civ. P. 56(c)

(stating that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" are considered when deciding a summary judgment motion); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 257 (1986) (providing that the burden of proof at the summary judgment stage rests upon the assumption that the non-moving party "had a full opportunity to conduct discovery"). Summary judgment presupposes the existence of an adequate record. *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007). "If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion." *Id.*

There has been no discovery in the case. Rose Gold's Motion repeats the Complaint's allegations and claims "there exists absolutely no question of material fact" that PayActiv breached the Agreement. (Pl.'s Br. in Supp. of Am. Mot. for Summ. J. at 8, ECF No. 18). While such an analysis would undoubtedly reduce the time and costs associated with litigation, not to mention judges' workloads, summary judgment doesn't quite work that way.

An appropriate Order follows.

BY THE COURT:

  */s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**